**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER ROMERO LOMAX,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>DR. CANLAS, et al.,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 10cv2226-WQH (WMc)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 24)** |

**Introduction**

Plaintiff, formerly incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983.[1] Plaintiff alleges various prison and medical officials at RJD have violated his Eighth Amendment right to adequate medical care.[2] (Compl. at 9; ECF No. 1). Plaintiff seeks injunctive relief as well as general and punitive damages. (*Id*. at 60-61).

On April 21, 2011, defendants in the above entitled action brought a motion to dismiss plaintiff's Complaint on the following grounds: (1) plaintiff fails to state a claim against defendant Jayasundara for deliberate indifference to his medical needs under the Eighth Amendment; (2) plaintiff fails to state a claim against defendants Franklin, Romero, and Grannis under the Fourteenth

---

[1] Plaintiff now lives in Tennessee. *See* (ECF No. 37).

[2] Plaintiff's underlying condition was a tumor located near his perineum.

Amendment due process clause with respect to plaintiff's inmate appeal; (3) plaintiff fails to state a claim against defendants Hernandez and Cate for supervisory liability; and, (4) plaintiff cannot sue any of the defendants in their official capacities. (ECF No. 24, p. 2). Plaintiff filed a response to the motion to dismiss on June 9, 2011. (ECF No. 29). Defendant filed a reply to plaintiff's response on July 1, 2011. (ECF No. 36).

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern District of California. After reviewing the pleadings and parties' briefs, for the reasons set forth below, the Court recommends defendants' Motion to Dismiss be **GRANTED**.

## **Factual Background**[3]

Due to the Complaint's verbose and disorganized presentation, the Court breaks down the factual background relevant to the present motion to dismiss into three categories: (1) a brief summary of relevant events; (2) a list of the defendants presently moving to dismiss (including their involvement in plaintiff's alleged injuries); and, (3) a catch-all miscellaneous section which covers events and claims not easily attributable to any particular date and/or defendant. Also, the Court includes a time-line of events as an appendix to this report and recommendation.

### *Brief Summary of Relevant Events[4]*

Plaintiff first requested to be seen by RJD medical staff on July 25, 2007 regarding a growth near his buttocks. Two months later, a ultrasound was performed at Alvarado Hospital. The ultrasound confirmed plaintiff's growth was Lipoma.

Following this diagnosis, Dr. Canlas submitted a request for surgery on October 10, 2007. Dr. Farinas examined plaintiff and measured the growth on December 28, 2007 and January 8, 2008. Between March 31, 2008 and May 27, 2008, plaintiff submitted numerous forms to the RJD medical

---

[3] These facts are taken from plaintiff's Complaint. The Court must accept as true all material allegations in the Complaint, and must construe the Complaint and all reasonable inferences drawn therefrom in the light most favorable to plaintiff. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Additionally, courts construe *pro se* pleadings liberally on a defendant's motion to dismiss for failure to state a claim. *Id.*

[4] Citations and further details of these events can be found in the following section which identifies the particular defendants and in Appendix A.

staff inquiring on the status of the surgery and requesting treatment. On June 11, 2008, plaintiff underwent surgery to remove the growth. Between June 12, 2008 and June 20, 2008, plaintiff submitted more inquiries regarding the delay of his surgery, including a letter to defendant Hernandez.

In August of 2008, Dr. Choo examined plaintiff. Dr. Choo did not find any remaining surgical staples. A few weeks later, Jayasundara and Dr. Canlas removed the final staple.

Between September 24, 2008 and April 21, 2009, plaintiff continued to file grievance forms and administrative appeals. These grievances and appeals regard the delay in surgery, sensations of pain and twitching, and loss of bowel control.

### *The Defendants*

In his Complaint, plaintiff identifies the following defendants who are the subject of the present motion to dismiss: Canlas, Whitehead, Choo, Jayasundara, Franklin, Tyler, Hernandez, Silva, and Romero.

### *Defendant Canlas*

Dr. Canlas allegedly denied plaintiff medical care, allowed defendant Jayasundara to perform unauthorized medical procedures, and wrote a false report. (ECF No. 1, pg. 2). At some point prior to surgery, plaintiff informed Dr. Canlas the growth was getting bigger. (*Id*. at 11). Dr. Canlas falsified a progress report which indicated plaintiff's tumor had stopped growing and plaintiff was not experiencing pain. (*Id*. at 35). Dr. Canlas refused to remove the staple within 5-7 days of surgery. (*Id*. at 48). Dr. Canlas denied plaintiff mandatory post-operative care. (*Id*. at 49).

### *Defendant Whitehead*

Nurse Whitehead allegedly denied medical care to plaintiff. (*Id*. at 2). At some point prior to surgery, plaintiff informed Nurse Whitehead the growth was getting bigger. (*Id*. at 11). At some point following plaintiff's June 11, 2008 surgery, plaintiff asked Nurse Whitehead when the surgical staples would be removed. (*Id*. at 14). Nurse Whitehead disregarded and ignored plaintiff's pleas for help and falsified medical documents. (*Id*. at 28-29). Nurse Whitehead refused to remove the staple within 5-7 days of surgery. (*Id*. at 48). Nurse Whitehead denied plaintiff mandatory post-operative care. (*Id*. at 49).

///

### *Defendant Choo*

Dr. Choo, the Chief Medical Officer at RJD, knew of plaintiff's pain but did not help alleviate the pain. (*Id.* at 3-4). Dr. Choo examined plaintiff following his surgery and informed him all staples had been removed. (*Id.* at 16). However, the final staple was not removed until a few weeks later. (*Id.* at 16). Dr. Choo intentionally left the staple inside plaintiff to protect other doctors and nurses. (*Id.* at 40). Dr. Choo refused to remove the staple within 5-7 days of surgery. (*Id.* at 48). Dr. Choo denied plaintiff mandatory post-operative care. (*Id.* at 49).

### *Defendant Jayasundara*

Nurse Practitioner Jayasundara performed unauthorized surgery on plaintiff in an unsterile environment. (*Id.* at 4). This surgery caused plaintiff extreme pain and defendant Jayasundara did not provide plaintiff with any medication to alleviate the pain. (*Id.*) Jayasundara "cut" on plaintiff for over an hour in an attempt to remove the staple. (*Id.* at 17). Plaintiff informed Jayansundara he was in extreme pain. (*Id.* at 17). Jayasundara declined to give plaintiff any pain medications. (*Id.* at. 17). Jayasundara refused to remove the staple within 5-7 days of surgery. (*Id.* at 48). Jayasundara denied plaintiff mandatory post-operative care. (*Id.* at 49).

### *Defendant Cate*

Defendant Cate, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), knew plaintiff had a serious medical condition yet denied plaintiff medical care. (*Id.* at 5, 57).

### *Defendant Grannis*

Defendant Grannis, the Chief Inmate Appeals Coordinator, denied plaintiff's right to redress grievances. (*Id* at 6). He also denied plaintiff's First Amendment right by denying plaintiff's appeals. (*Id.* at 53).

### *Defendant Franklin*

Defendant Franklin, the Inmate Appeals Coordinator at RJD, denied plaintiff his right to redress grievances for a serious medical need. (*Id.* at 6). He also denied plaintiff's First Amendment right by denying plaintiff's appeals. (*Id.* at 53).

///

*Defendant Tyler*

Nurse Tyler intentionally delayed scheduling plaintiff's surgery. (*Id*. at 7). Nurse Tyler intentionally disregarded plaintiff's July 7, 2007 physicians request for a sonogram. (*Id*. at 9). Nurse Tyler intentionally delayed Dr. Canlas's October 10, 2007 request for surgery. (*Id*. at 10). Nurse Tyler intentionally delayed making a surgical appointment for plaintiff at the hospital. (*Id*. at 14).

*Defendant Hernandez*

Defendant Hernandez, Warden at RJD, disregarded and ignored plaintiff's pleas for medical assistance. (*Id*. at 7, 57).

*Defendant Silva*

Dr. Silva refused to perform her duties as a medical doctor. (*Id.* at 8). Dr. Silva should have contacted the Medical Authorization Review committee ("MAR") in June of 2008 to check the status of plaintiff's surgical procedure request. (*Id*. at 14).

*Defendant Romero*

Defendant Romero, the Health Care Manager at RJD, intentionally denied plaintiff medical care and refused to perform his duties. (*Id*. at 8). Romero wrote a false administrative appeal response and ignored plaintiff's other issues. (*Id*. at 55).

*All defendants*

All defendants ignored plaintiff's pleas for pain medication and allowed the tumor to grow. (*Id*. at 47-48).

*Miscellaneous Facts*

Plaintiff contends surgery should have been performed when tumor was 3cm. (ECF No. 1, pg. 18). In addition, Whitehead, Canlas, Choo, Jayasundara, Grannis, Franklin, and Hernandez intentionally left the staples inside plaintiff for weeks after the surgery. (*Id*. at 18). At some point post-surgery, plaintiff complained to Nurse Whitehead about his uncontrollable bowel movements but Nurse Whitehead did not address the problem or allow plaintiff to see a doctor. (*Id.* at 20).

## Standard of Review

*Rule 12(b)(6) Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

1  12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd.*
2  *of Educ.*, 526 U.S. 629, 633 (1999). The old formula—that the complaint must not be dismissed unless
3  it is beyond doubt without merit—was discarded by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563
4  n. 8 (2007).

5  Now, a complaint must be dismissed if it does not contain "enough facts to state a claim to
6  relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility
7  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that
8  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,
9  1949, 173 L.Ed.2d 868 (2009). The court must accept as true all material allegations in the complaint,
10 as well as reasonable inferences to be drawn from them, and must construe the complaint in the light
11 most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir.2004)
12 (*citing Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir.2003)); *Parks Sch. of Bus., Inc. v.*
13 *Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
14 Cir.1986).

15 The court does not look at whether the plaintiff will "ultimately prevail but whether the
16 claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236
17 (1974); *see Bell Atl. Corp. v. Twombly*, 550 U.S. at 563 n. 8. A dismissal under Rule 12(b)(6) is
18 generally proper only where there "is no cognizable legal theory or an absence of sufficient facts
19 alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001)
20 (*citing Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)).

21 The court need not accept conclusory allegations in the complaint as true; rather, it must
22 "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v.*
23 *Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11
24 F.3d 865, 868 (9th Cir.1993); *see also Cholla Ready Mix*, 382 F.3d at 973 *(citing Clegg v. Cult*
25 *Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994)) (stating that on Rule 12(b)(6) motion, a
26 court "is not required to accept legal conclusions cast in the form of factual allegations if those
27 conclusions cannot reasonably be drawn from the facts alleged[ ]"). "Nor is the court required to
28 accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

1  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

2  When analyzing the sufficiency of a complaint, Courts may consider the plaintiff's exhibits attached to his complaint. *See Parks Sch. of Bus.*, 51 F.3d at 1484 (*citing Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir.1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading ...." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313–14 (9th Cir.1996). Here, Plaintiff has attached various grievance forms, administrative appeal forms, and medical request forms to his Complaint. The Court will consider these exhibits in addressing defendant's motion.

***Standards Applicable to Pro Se Litigants***

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.1992). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (quotation omitted) (*citing Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839

F.2d at 623–24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir.2000).

### *Stating a Claim Under 42 U.S.C. § 1983*

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir.1986).

## Discussion

### *Plaintiff's Eighth Amendment Claim Against Defendant Jayasundara*

Plaintiff claims defendant Jayasundara "performed surgery" on plaintiff to remove surgical staples and performed this surgery in an unsterile environment. *See* (ECF No. 1, Compl. at 4). Plaintiff also asserts Jayasundara's unauthorized surgery caused plaintiff tremendous pain but Jayasundara did not provide plaintiff with any pain medications. (*Id*. at 9, 16-17). Plaintiff contends defendant Jayasundara and Dr. Canlas worked in tandem to remove the remaining surgical staple. *See* (*Id.* at 17). Although the pair of defendants discussed possibly taking plaintiff to the hospital to have the stubborn staple removed, Jayasundara eventually removed the staple at the prison. *See* (*Id.* at 17). Finally, plaintiff asserts Jayasundara intentionally left the surgical staples in plaintiff following his initial surgery to remove the tumor. (*Id*. at 18).

Not every prisoner claim of inadequate medical treatment states a violation of the Eighth Amendment. To state a section 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show: (1) a "'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) the defendant's response "was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.1991)).

To act with deliberate indifference, a prison official must both know of and disregard an

excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference requires a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. Indeed, "neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't Corrs.*, 220 F.Supp.2d 1098, 1105 (N.D.Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "[A] mere 'difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985). Also, the indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105-06.

Here, plaintiff has successfully established a serious medical need because plaintiff alleges the presence of a serious tumor intertwined with his internal parts in a private and sensitive area. Compl. at 9-10. Furthermore, plaintiff's Complaint and attached exhibits show plaintiff's post-surgery recovery process involved the removal of 15 surgical staples recovered from plaintiff's surgical site on three separate occasions. (Compl. 14-17). The Court finds these allegations and supporting factual descriptions establish a serious medical need.

However, plaintiff fails to establish Jayasundara acted with a deliberate indifference to plaintiff's medical needs by failing to remove the staples 5-7 days following surgery. Plaintiff's

1  Complaint does not allege any interaction or event involving Jayasundara until Jayasundara
2  *attempted to remove the staple*. Nor does plaintiff set forth any facts to show Jayasundara had any
3  knowledge or involvement in plaintiff's initial surgery or subsequent consultations. Thus, plaintiff
4  has failed to state a cognizable Eighth Amendment claim against defendant Jayasundara for failing
5  to remove the surgical staple at an earlier date.

6  Plaintiff also claims defendant Jayasundara acted with deliberate indifference to plaintiff's
7  medical needs by removing the staple without providing plaintiff with pain medication.
8  Plaintiff alleges Jayasundara and Dr. Canlas knew the staple was deeply embedded in his skin and
9  should have been removed weeks before. (Compl. at 17). Plaintiff also alleges Dr. Canlas and
10 Jayasundara took turns attempting to remove the staple and "cut" plaintiff for over an hour without
11 providing him with pain medication either before or after the procedure. (*Id.*) Plaintiff concludes
12 this amounts to cruel and unusual punishment whereas defendants conclude this merely constitutes
13 a difference in medical judgment. (ECF No. 24, pg. 6).

14 After careful review of plaintiff's Complaint, the Court concludes plaintiff has failed to
15 state a plausible Eighth Amendment cause of action against defendant Jayasundara. Although
16 plaintiff's allegations suggest Jayasundara may have acted negligently, something more than
17 negligence, or gross negligence, or medical malpractice is required for a violation of the Eighth
18 Amendment. *Toguchi*, 391 F.3d at 1060. Notably, plaintiff does not allege Jayasundara acted with
19 an ulterior motive when deciding against giving plaintiff pain medication. Nor does plaintiff allege
20 Jayasundara or Dr. Canlas restrained or subdued plaintiff in order to cut him. Such allegations may
21 be sufficient to raise a negligence claim to the level of constitutional violation. *See, e.g., Jackson v.*
22 *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Rather, plaintiff's Complaint merely alleges
23 Jayasundara, along with Dr. Canlas, denied plaintiff's request for medications. Thus, without
24 more, the Complaint fails to set forth facts to demonstrate Jayasundara acted with a deliberate
25 indifference to plaintiff's medical needs.

26 This Court **RECOMMENDS** Plaintiff's allegations against defendant Jayasundara be
27 **DISMISSED** with leave to amend.

28 *Plaintiff's Claims Against Defendants Franklin, Romero, and Grannis*

       Construed *liberally*, plaintiff's complaint contains allegations that defendants Franklin, Romero, and Grannis violated plaintiff's First, Eighth, and Fourteenth Amendment rights. Defendants move to dismiss plaintiff's supposed Fourteenth Amendment Due Process Claim. (ECF No. 24, pg. 6).

       "If a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process" of the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)); *accord Saucier v. Katz*, 531 U.S. 991 (2001).

       Here, plaintiff appears to bring a First Amendment retaliation claim and an Eighth Amendment cruel and unusual punishment claim under the generalized notion of due process. Accordingly, the Court will analyze this claim under the First and Eighth Amendments. *See Albright v. Oliver*, 510 U.S. 266, 272–73 (1994) (noting that when a broad "due process" violation is alleged, but a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001).

       As an initial matter, plaintiff's claims against Romero, whether categorized as First, Eighth, or Fourteenth Amendment claims, lack the specificity and factual content required for a cognizable claim. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001) (*citing Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)). Here, plaintiff alleges Romero "wrote things that are not true within his/her staff second level staff response" and "decided not to address most of the appeal issues." (ECF No. 1 at 54). Plaintiff neither specifies what false things Romero wrote in his response nor identifies the issues Romero failed to address. Additionally, plaintiff does not connect Romero's alleged conduct to any particular legal theory. Thus, plaintiff has failed to state a claim

against Romero.

Plaintiff's more specific Eighth Amendment claims against Grannis and Franklin also suffer for lack of sufficient facts. Plaintiff contends Grannis and Franklin intentionally left the staples inside plaintiff for weeks after the surgery. However, plaintiff has failed alleged any facts regarding Grannis' and Franklin's knowledge of the presence of the staple. Indeed, the grievance forms and inmate appeals attached to the complaint do not reference the staple but rather contain general grievances regarding the delay of surgery. (*See* Compl., Exhibit F). Assuming, *arguendo*, Grannis and Franklin knew of the presence of the final surgical staple, plaintiff has still failed to allege any facts to indicate these defendants intentionally denied, delayed, or interfered with his medical treatment. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096. Accordingly, plaintiff has failed to state a cognizable Eighth Amendment claim against Grannis and Franklin.

Plaintiff's First Amendment claims against Grannis and Franklin also fail. Here, plaintiff contends Grannis and Franklin denied his "emergency" grievances regarding his medical care. (ECF No. 1, pg. 53). Similarly, plaintiff claims Romero "decided not to address most of the appeal issues." (*Id*. at 54). Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action. *See Flick v. Alba*, 932 F.2d 728 (8th Cir.1991) ("prisoner's right to petition the government for redress ... is not compromised by the prison's refusal to entertain his grievance."). Accordingly, plaintiff's First Amendment claims against Grannis, Franklin, and Romero should be dismissed.

To the extent plaintiff raises a Fourteenth Amendment due process claim against Grannis, Franklin, and Romero separate and apart from his First Amendment retaliation claim, the Court finds Plaintiff fails to state a legally cognizable claim because he does not allege any facts in support thereof with sufficient specificity. If plaintiff intends to amend his pleadings to raise a separate Fourteenth Amendment due process claim, plaintiff must show: (1) a life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1990).

Accordingly, the Court **RECOMMENDS** plaintiff's allegations against Grannis, Franklin,

and Romero be **DISMISSED** with leave to amend.

///

### *Plaintiff's Claim Against Defendants Hernandez and Cate for Supervisory Liability*

Vicarious liability does not apply to supervisorial personnel in a civil rights action. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir.2003); *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). Rather, a supervisor may be liable only if he or she is personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir.2002); *MacKinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir.1995). A sufficient causal connection may be established by showing the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury. *Graves*, 339 F.3d at 848; *Redman*, 942 F.2d at 1447. A supervisor also may be liable for a constitutional violation by a subordinate if the supervisor knew of the violation and failed to prevent it. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Finally, a supervisor may be liable if the alleged deprivation resulted from a failure to properly train or supervise personnel, or from an official policy or custom for which the supervisor was responsible. *Watkins v. City of Oakland, California*, 145 F.3d 1087, 1093 (9th Cir.1998); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984).

Here, plaintiff claims defendant Cate, the CDCR director, and defendant Hernandez, the RJD warden, are liable as supervisors for denying plaintiff medical care and ignoring plaintiff's pleas for help. (ECF No. 1 at 5, 7, 57-8). Plaintiff attached, as exhibits to his complaint, two letters he allegedly sent to defendant Cate and one letter he allegedly sent to defendant Hernandez. (ECF No. 1-4 pg. 10 & No. 1-5 pg. 38-39, 47-48). In his two letters to Cate, plaintiff explains what grievance and appeals levels he has satisfied, requests a response regarding the delay of surgery, and asks if the "medical system" will continue to treat him after his release. Both letters were written to Cate *following* plaintiff's surgery. Similarly, in his letter to Hernandez, plaintiff relates the history of his treatment, asks why the surgery took so long to be scheduled and performed, and

states "I'm not wanting anyone to lose their job of anything but . . . I think you should be aware of these actions that happened to me." (*Id*.)

Plaintiff has failed to allege any facts to suggest Cate and Hernandez "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Importantly, plaintiff did not request either Cate or Hernandez immediately intervene in his then *present* treatment, but rather requested the defendants address the *prior* delay in scheduling his surgery. Additionally, plaintiff did not mention the surgical staple issue or allege Cate and Hernandez were present or on notice of any of the alleged violations before receiving plaintiff's letters. Thus, plaintiff has failed to present any facts to suggest Cate or Hernandez knew of or participated in the alleged violations. Accordingly, this Court **RECOMMENDS** plaintiff's supervisory liability claims against defendants Cate and Hernandez be **DISMISSED** with leave to amend.

### *Eleventh Amendment Immunity For Official Acts*

Defendants seek dismissal of plaintiff's monetary damages claim to the extent it is based on acts taken in an official capacity. While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, it does not bar damage actions against state officials in their personal capacities. *Will v. Michigan*, 491 U.S. 58, 66 (1989). In addition, it does not bar actions against state officers in their official capacities if the plaintiff seeks injunctive relief. *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989).

Here, plaintiff has sued defendants in their official and individual capacities. Plaintiff's prayer also seeks compensatory and punitive damages as well as injunctive relief. (ECF No. 1 at 61). Although plaintiff is foreclosed from seeking money damages against defendants in their official capacity, he may still seek injunctive relief against the defendants in their official capacity as well as money damages against the defendants in their individual capacity. Accordingly, **IT IS RECOMMENDED** defendants' motion to dismiss plaintiff's claim for money damages **ONLY** against Defendants in their official capacity be **GRANTED** with prejudice. Plaintiff's claim for injunctive relief may not be dismissed on these grounds. *See Chaloux*, 886 F.2d at 252.

///

1  ///

2  ///

3  **Conclusion**

4  For the reasons set forth herein, it is **RECOMMENDED** that an order be entered as
5  follows:

6  Defendants' Motion to Dismiss plaintiff's claims against defendant Jayasundara be
7  **GRANTED** with leave to amend.

8  Defendants' Motion to Dismiss claims against Defendants Franklin, Romero, and Grannis
9  be **GRANTED** with leave to amend.

10  Defendants' Motion to Dismiss plaintiff's claims against defendants Cate and Hernandez
11  for supervisory liability be **GRANTED** with leave to amend.

12  Defendants' Motion to Dismiss Plaintiff's claim against all defendants in their official
13  capacities for money damages be **GRANTED WITH PREJUDICE**.

14  This report and recommendation of the undersigned Magistrate Judge is submitted to the
15  United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. §
16  636(b)(1).

17  **IT IS ORDERED** that no later than **January 6, 2012**, any party to this action may file
18  written objections with the Court and serve a copy on all parties. The document should be
19  captioned "Objections to Report and Recommendation."

20  **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court
21  and served on all parties no later than **January 13, 2012**. The parties are advised that failure to
22  file objections within the specified time may waive the right to raise those objections on appeal of
23  the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24  **IT IS SO ORDERED**.

25  DATED: December 9, 2011

27  Hon. William McCurine, Jr.
   U.S. Magistrate Judge
28  United States District Court

# APPENDIX A

*Timeline*

| | |
|---|---|
| July 25, 2007 | Plaintiff requests to be seen for growth. (ECF No. 1, pg. 9). |
| July 26, 2007 | Unidentified doctor submits a request for services (sonogram). *Id*. |
| August 19, 2007 | Plaintiff submitted a "CDC 7362" form to Nurse Whitehead . *Id*. at 24. Nurse Whitehead processed plaintiff's form on August 22, 2007. *Id*. |
| August 27, 2007 | Plaintiff submits another "CDC 7362" form. *Id*. Nurse Whitehead processed this form on August 28, 2007. *Id*. |
| September 6, 2007 | Dr. Lehv submits another request for services form. Dr. Lehv marked this form as "initial" as opposed to "follow-up." *Id*. at 10. Dr. Canlas allegedly wrote a false report about plaintiff's tumor. *Id*. at 33. |
| September 26, 2007 | Ultrasound performed at Alvarado Hospital confirming Lipoma. *Id*. at 10. |
| October 10, 2007 | Dr. Canlas submits a request form for surgery. *Id*. at 10. |
| December 13, 2007 | Plaintiff submits another "CDC 7362" form. *Id*. Nurse Whitehead processed this form on December 18, 2008. *Id*. (note: 2008 may be typo) |
| December 28, 2007 | Dr. Farinas examined plaintiff and indicated the mass 6cm in size. Dr. Farinas recommended excision. *Id.* at 10. |
| January 8, 2008 | Dr. Farinas examined plaintiff and indicated mass was now 6-7cm in size. Plaintiff told Dr. Farinas he was in a lot of pain. *Id.* at 11. |
| March 31, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 25. Nurse Whitehead processed this form on April 4, 2008. *Id*. |
| April 28, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 25. Nurse Whitehead processed this form on May 1, 2008. *Id*. |
| May 12, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 25. This form not processed. *Id*. Also submits an administrative appeal. *Id*. at 49. |
| May 21, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 26. Whitehead received request form. *Id*. This form not processed. *Id*. |
| May 27, 2008 | Plaintiff submits an administrative appeal re: delay of surgery. *Id*. at 49. |
| June, 2008 | Dr. Silva called the RJD specialty clinic to inquire about the status of the surgery. *Id*. at 13. Dr. Silva sent plaintiff back to his cell without an examination or explanation of the delay. *Id*. at 13. |
| June 11, 2008 | Plaintiff underwent surgery to remove the growth. *Id*. at 14. |
| June 12, 2008 | Plaintiff submits another "CDC 7362" form. *Id*. at 26. No indication this form was received or processed. *Id*. |

| | |
|---|---|
| June 17, 2008 | Plaintiff sent a letter to defendant Hernandez requesting help. *Id*. at 57. |
| June 20, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 26. Whitehead processed form on June 25, 2008. *Id*. Whitehead informed plaintiff that nurses would keep an eye on his staples. *Id*. Plaintiff complains he is using t-shirts for dressing the surgical site, is in extreme pain, and has not received any pain medication. *Id*. |
| June 27, 2008 | Plaintiff had "surgery" on this date. *Id*. at 26. Plaintiff sent administrative appeals which were returned. *Id*. at 50. |
| July 29, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 27. Nurse Whitehead processed this form on July 31, 2008. *Id*. |
| August 2008 | Plaintiff examined by Dr. Choo. *Id*. at 16. Dr. Choo did not find any remaining surgical staples. *Id*. at 16. Plaintiff informed Dr. Choo he felt something poking him and he was in pain. *Id*. at 16. A staple was discovered and removed a few weeks later. *Id*. at 16. |
| September 24, 2008 | Plaintiff submits another "CDC 7362" form. *Id.* at 27. Nurse Whitehead processed this form on September 30, 2008. *Id*. |
| January 2, 2009 | Plaintiff submits another "CDC 7362" form. *Id.* at 27. Nurse Whitehead processed this form on January 6, 2009. *Id*. |
| January 23, 2009 | Plaintiff sends letter to defendant Cate requesting help. *Id*. at 57. |
| March 9, 2009 | Plaintiff submits another "CDC 7362" form. *Id.* at 28. No indication this form was processed but it was received by Nurse Whitehead on April 22, 2009. *Id*. |
| April 21, 2009 | Plaintiff filed an administrative appeal. *Id*. at 19. |
| May 28, 2009 | Dr. Canlas allegedly falsified progress reports relating to plaintiff's inability to control his bowel movements. *Id*. at 44. |